UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Scott Hendricks, | ) | C/A No. 6:24-cv-03587-JDA-WSB |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Greenville County, Greenville County | ) | |
| Sheriff's Office, Officer Matthew Anderson | ) | |
| *in his Individual Capacity*, Officer Tyler | ) | |
| Fletcher *in his Individual Capacity*, Officer | ) | |
| Michael Downy *in his Individual Capacity*, | ) | |
| Officer Bradley Grice *in his Individual* | ) | |
| *Capacity*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff filed this action alleging state law claims and constitutional violations pursuant to 42 U.S.C. § 1983. ECF No. 1-1. In accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(f) (D.S.C.), the undersigned United States Magistrate Judge is authorized to review all pretrial matters in cases filed under § 1983 and submit findings and recommendations to the district court. Presently before the Court is Defendants' Motion for Summary Judgment. ECF No. 33.

## BACKGROUND

Plaintiff commenced this action by filing a Complaint in the Greenville County Court of Common Pleas. After an Amended Complaint (ECF No. 1-1) was filed and served, Defendants removed the case on June 20, 2024. ECF No. 1. Plaintiff's Amended Complaint (ECF No. 1-1) alleges seven causes of action. The first five causes of action are asserted under the South Carolina Tort Claims Act ("SCTCA"). The sixth cause of action alleges excessive use of force under the

1

United States Constitution, the South Carolina Constitution, and 42 U.S.C. § 1983.[1]  The seventh cause of action alleges a claim under S.C. Code Ann. § 47-3-110, the South Carolina dog bite statute.  The claims all relate to and arise out of Plaintiff's arrest in which a police dog was used. Claims are asserted against Greenville County, Greenville County Sheriffs Office, Officer Matthew Anderson ("Anderson"), Officer Tyler Fletcher ("Fletcher"), Officer Michael Downey ("Downey")[2], and Officer Bradley Grice ("Grice").  All four of the individual Defendants work as officers or deputies of the Greenville County Sheriff's Office.

Defendants filed a Motion for Summary Judgment on August 18, 2025.  ECF No. 33.  As evidentiary support for the Motion, Defendants filed eleven exhibits, consisting of affidavits of officers involved; an affidavit and report from Defendants' expert, Nash; documents regarding the criminal charges filed against Plaintiff regarding the incident at issue and Plaintiff's plea of guilty to the charges; and excerpts of Plaintiff's deposition.  On September 4, 2025, Plaintiff filed a Response in Opposition to Defendants' Motion for Summary Judgment.  ECF No. 36.[3]  In opposition to the Motion for Summary Judgement, Plaintiff submitted, as evidence, two Greenville County Sheriff's Office's general orders and a copy of the expert report prepared by Nash.  Plaintiff did not present or cite any affidavit or testimony describing the incident from his point of view.

---

[1] The headings for the sixth cause of action refers to "43 U.S.C. § 1983".  However, this appears to be a scrivener's error.

[2] The caption spells Downey's name as "Downy", with no "e".  Defendants indicate that the proper spelling includes the "e".  ECF No. 33-1 at n. 1.  The Court will use the spelling identified by Defendant Downey, and the Clerk of Court is directed to update the docket to reflect this Defendant's correct name.

[3] The Response was due on September 2, 2025.  However, Defendants do not raise the timeliness of the filing as an issue, and the Court has considered all arguments in the Response as if timely filed.

Defendants filed a Reply regarding the Motion for Summary Judgment on September 18, 2025. ECF No. 39. No additional evidence or exhibits were submitted with the Reply. The Motion for Summary Judgment is fully briefed and ripe for consideration.

## FACTS

The facts of this case begin with a traffic stop on Plaintiff on February 10, 2023.[4] ECF No. 36 at 1.[5] The traffic stop was made by Fletcher. *Id.* Plaintiff pulled into a gas station, where the interaction with the deputies occurred. During the stop, Fletcher observed Plaintiff visibly shaking with labored breath and speaking very loudly. ECF No. 33-2. Plaintiff was also unable to provide the registration or proof of insurance for his vehicle. *Id.*; *see also* Fletcher BWC 1. Fletcher noticed a torch lighter in the vehicle, which can be used with illegal drugs. ECF No. 33-2. Shortly after Fletcher stopped Plaintiff, Downey and Grice arrived as backup. During the interaction, Anderson also arrived with his K-9 named Leo (the "K-9").

Because of Plaintiff's behavior, possession of a torch lighter, past drug record, very small pupils, and agitation, the individual Defendants had Anderson bring out the K-9 to sniff for the odor of illegal drugs around Plaintiff's vehicle. ECF No. 33-4 at 7-8. When Anderson brought the K-9 out, Plaintiff became increasingly agitated. Anderson BWC at 3:44; Downey BWC at 9:15; Fletcher BWC2 at 7:50; Grice BWC at 9:28. Anderson then commanded the K-9 to sniff for

---

[4] The Amended Complaint alleges the incident occurred on "05/23/2023." ECF No. 1-1, p. 4, ¶ 2 within STATEMENT OF FACTS section. However, in the briefing on the Motion for Summary Judgment, the parties appear to agree the proper date is February 10, 2023.

[5] The traffic stop and on scene interactions with Plaintiff were captured on body-worn cameras ("BWC") for the named individual Defendants, as well as one other officer. The videos from the BWCs were submitted as part of the affidavits of the officers as exhibits to the Motion for Summary Judgment. Citations to the BWC are identified by the name of the Officer and the time stamp of the event cited. The parties do not contest the authenticity of the BWC videos, and both Plaintiff and Defendants reference the BWC videos as primary evidence of the incident. The facts recited herein are drawn mostly from the BWC videos.

the odor of illegal drugs from the outside of Plaintiff's vehicle. Anderson BWC at 2:28; ECF No. 33-4. The K-9 alerted near the passenger door of Plaintiff's vehicle. *Id.*; *see also* Anderson BWC at 2:48.

After the K-9 alerted, Defendants told Plaintiff they had probable cause to search his vehicle. Plaintiff was angry, argumentative, and cussing. Grice BWC 11:30 - 12:11; Anderson BWC 3:10-3:54. Grice told Plaintiff that he needed to relax, and Plaintiff said, "I ain't relaxing for nothing!" Grice BWC at 12:12. Plaintiff stepped away from the front of Grice's car while flailing his arms, and Grice said, "You squaring up to me?" and "I'm about to knock your ass out." Grice BWC at 12:20. Fletcher and Downey then approached Plaintiff, instructing Plaintiff to turn around and put his hands behind his back. Grice BWC at 12:24; Fletcher BWC2 at 10:40; Downey BWC at 12:08; Anderson BWC at 4:05. Plaintiff responded by saying "No" and pulling his arms away as Defendants moved to place handcuffs on him. Grice BWC at 12:25. A struggle ensued in which Fletcher, Downey, and Grice attempted to handcuff Plaintiff and Plaintiff was resisting Defendants' efforts. During the struggle, Defendants instructed Plaintiff on multiple occasions to stop resisting and warned Plaintiff that he was going to get "dog bit" if he continued to struggle. Defendants were able to first secure Plaintiff's right wrist in a cuff. Grice BWC at 12:32; Downey at 12:21. However, Grice, Downey, and Fletcher continued to struggle to get Plaintiff's left wrist in the handcuffs. During the struggle, Grice and Downey attempted additional techniques to control Plaintiff without success. ECF No. 33-3 at 7 (Grice report noting use of "under arm pin"); ECF No. 33-7 at 7 (Downey report stating right foot kick to Plaintiff's shin as effort to control Plaintiff). The K-9 was then directed to engage and bit Plaintiff in the side of the abdomen. Anderson BWC at 4:29; Downey BWC at 12:37; Grice BWC 12:49. Plaintiff's left wrist was secured in the handcuff only following some additional struggling after the dog was engaged.

Grice BWC at 13:04; Downey BWC at 12:52.  After Plaintiff was in handcuffs, Anderson stated that Plaintiff's arm was pinching the dog's head so that Anderson could not get the K-9 loose. Anderson BWC at 4:50.  Anderson then got the K-9 off using a bite bar.  Anderson BWC at 5:07.

After Plaintiff was secured, the search of Plaintiff's vehicle resumed.  Defendants found methamphetamine and a gun.  Downey BWC at 18:02 and 24:46.

Anderson examined Plaintiff's wound from the dog bite.  Anderson BWC at 7:03; Downey BWC 15:03.  Plaintiff was also treated on the scene by a paramedic and taken to the hospital to have the dog bite cleaned.

Plaintiff was charged with multiple offenses arising from this incident.  Relevant to the Court's review, on March 25, 2024, Plaintiff pled guilty to resisting arrest and trafficking in methamphetamine.  ECF No. 33-10.  Plaintiff was sentenced to 6 years on the trafficking in methamphetamine charge and to time served on the resisting arrest charge.  *Id*. at 25.

## APPLICABLE LAW

### Standard of Review

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment, that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257.  In determining whether a genuine issue has been raised, a court must construe all

inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of a plaintiff's position is insufficient to withstand a defendant's summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

Additionally, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992)); *see* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . . ."); *Carlson v. Bos. Sci. Corp.*, 856 F3d 320, 324 (4th Cir. 2017) (noting that the Federal Rules of Civil Procedure "require parties to cite all evidence in support of their positions at summary judgment, thus permitting a district court to limit its review to such cited materials."); *Arvon v. Libert Mut. Fire Ins. Co.*, No. 20-1249, 2021 WL 3401258, at *3 (4th Cir. Aug. 4, 2021)

(noting that the court need only consider cited material in a summary judgment brief) (citation and internal quotation marks omitted).

**Section 1983**

Plaintiff's Amended Complaint asserts a claim pursuant to 42 U.S.C. § 1983, which "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). A civil action under § 1983 "creates a private right of action to vindicate violations of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Rehberg v. Paulk*, 566 U.S. 356, 361 (2012) (quoting 42 U.S.C. § 1983). To state a claim under § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

## ANALYSIS

Plaintiff's Amended Complaint (ECF No. 1-1) alleges seven causes of action. The first five causes of action are asserted under the SCTCA. The sixth cause of action alleges excessive use of force under the United States Constitution, the South Carolina Constitution, and 42 U.S.C. § 1983. The seventh cause of action is brought pursuant to S.C. Code Ann. § 47-3-110, the South Carolina dog bite statute. The Court first addresses the sole federal claim in the sixth cause of action.

**Section 1983 Claim**

**Defendants Subject to Dismissal**

Plaintiff purports to assert the § 1983 claim against all Defendants. ECF No. 1-1 at 9. Defendants argue that Greenville County and Greenville County Sheriffs Office are not proper parties to a § 1983 claim. ECF No. 33-1 at 14. Plaintiff does not directly address these arguments.

*Greenville County Sheriffs Office*

The law is well established that "[o]nly 'persons' may act under color of state law; therefore, a defendant in a § 1983 action must qualify as a 'person.'" *Licon v. S.C. Dep't of Corr.*, C/A No. 1:21-cv-4019-JD-SVH, 2022 WL 17418053, at *3 (D.S.C. July 20, 2022), *R&R adopted by* 2022 WL 17261396 (D.S.C. Nov. 28, 2022). A sheriff's office is not a "person" subject to suit under § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989) (explaining that neither the state nor its agencies is a "person" within § 1983); *Ramirez v. Anderson Cnty. Sheriff's Office*, C/A No. 1:14-cv-3217-TMC-SVH, 2016 WL 4394505, at *2 (D.S.C. July 25, 2016) (explaining the sheriff's office, as an arm of the state, is not a "person" within the meaning of § 1983), *R&R adopted by* 2016 WL 4266130 (D.S.C. Aug. 12, 2016); *Brown v. Oconee Cnty. Sheriff's Off.*, C/A No. 8:20-cv-03282-DCC-JDA, 2020 WL 8339965, at *1 (D.S.C. Sept. 21, 2020) (noting the Oconee County Sheriff's Office is not a "person" that can be sued under § 1983), *R&R adopted by* 2021 WL 288417 (D.S.C. Jan. 27, 2021), *aff'd*, 857 F. App'x 742 (4th Cir. 2021). As such, Greenville County Sheriff's Office is entitled to summary judgment on the § 1983 claim asserted against it.

*Greenville County*

Defendants argue that Greenville County has no authority to control the actions of deputy sheriffs and therefore can have no responsibility for the actions of the deputy sheriffs. ECF No.

33-1 at 14 (citing *Allen v. Fidelity & Deposit Co.*, 515 F. Supp. 1185, 1190 (D.S.C. 1981), *aff'd*, 694 F.2d 716 (4th Cir. 1982); *Lewallen v. McCarley*, C/A No. 8:21-cv-1171-SAL-MHC, 2022 WL 3161855, at *5 (D.S.C. July 7, 2022)).  Plaintiff makes no opposition or argument regarding Greenville County's liability under § 1983.  *See* ECF No. 36.  "The failure of a party to address an issue raised in summary judgment may be considered a waiver or abandonment of the relevant cause of action."  *Eady v. Veolia Transp. Servs.*, 609 F. Supp. 2d 540, 560-61 (D.S.C. 2009); s*ee also Snyder v. Auto-Owners Ins. Co.*, 634 F. Supp. 3d 252, 257 (D.S.C. 2022) (granting summary judgment for claims the plaintiff did not address).

Additionally, although Greenville County is not an individual, it may be sued under § 1983 for violation of a federal right pursuant to *Monell v. Department of Social Services,* 436 U.S. 658, 690 (1978) (finding local governments are "persons" for purposes of § 1983 liability).  *Monell* liability is based on the execution of a governmental policy or custom, and a local government may not be held liable under § 1983 based on a *respondeat superior* theory.  *Monell*, 436 U.S. at 690–91.  The fact that a local government employs an individual, and that individual violated a plaintiff's constitutional right, is alone insufficient to establish liability for the local government. *Id.* at 691.  Instead, a plaintiff must identify a local government's "policy" or "custom" that caused the plaintiff's injury.  *Bd. of Cnty. Commissioners v. Brown,* 520 U.S. 397, 403 (1997).  Plaintiff has failed to identify a policy or custom of Greenville County which caused his federal rights to be violated, and he therefore fails to state a claim for liability.[6]  *See Wambach v. Wright*, C/A No. 1:10-cv-2912-HFF-SVH, 2011 WL 1597660, at *4 (D.S.C. Feb. 7, 2011), *R&R adopted by* 2011 WL 1595171 (D.S.C. Apr. 27, 2011); *Sage v. Spartanburg Cnty. Det. Ctr.*, C/A No. 8:23-cv-

---

[6] The only policies referenced by Plaintiff are General Orders issued by the Greenville County Sheriff's Office, not Greenville County.  *See* ECF Nos. 36-1; 36-2.

00317-TMC-JDA, 2023 WL 3794202, at *3 (D.S.C. Mar. 29, 2023) ("A municipality is responsible only when the execution of its policy or custom—made by its lawmakers or individuals whose acts 'may fairly be said to represent official policy'—inflicts injury."), *R&R adopted by* 2023 WL 3791110 (D.S.C. June 2, 2023). Based upon the foregoing, Greenville County is entitled to summary judgment on the § 1983 claim asserted against it.

**Excessive Force under § 1983**

### Applicable Law

Plaintiff alleges the individual Defendants used excessive force during his arrest. Plaintiff's excessive force claim is governed by the Fourth Amendment. *See Graham v. Connor*, 490 U.S. 386, 395 (1989) (holding that "*all* claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach.") (emphasis in original).

The Fourth Amendment protects "[t]he right of the people to be secure in their persons ... against unreasonable searches and seizures ...." U.S. Const. amend. IV. "Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396. "This right is obviously greater when the suspect is resisting arrest and refusing to comply with the officer's orders." *Terrell v. City of Spartanburg,* C/A No. 7:17-cv-02738-BHH-JDA, 2018 WL 4782334, at *5 (D.S.C. Sept. 12, 2018). However, "[t]he Fourth Amendment bars police officers from using *excessive* force to effectuate a seizure." *Yates v. Terry*, 817 F.3d 877, 884 (4th Cir. 2016) (emphasis added). "Courts evaluate a claim of excessive force based on an 'objective reasonableness' standard." *Id.* (quoting *Graham*, 490 U.S. at 399). "Courts

are to carefully balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 884-85 (citations and internal quotation marks omitted). "Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396 (citing *Tenn. v. Garner*, 471 U.S. 1, 8-9 (1985)). Therefore the three factors to analyze, established in *Graham v. Connor* (1) "the severity of the crime"; (2) "whether the suspect posed an immediate threat to the safety of the officers or others"; and (3) "whether he is actively resisting arrest or attempting to evade arrest." *Id.*. The United States Court of Appeals for the Fourth Circuit has held that, among these *Graham* factors, the second – whether the suspect poses an immediate threat to the safety of the officers or others – is "the most important." *Lewis v. Caraballo*, 98 F.4th 521, 531 (4th Cir. 2024).

"[T]he reasonableness inquiry in an excessive force case is an objective one: the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397. "An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." *Id.* "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396. Additionally, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in

11

circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Id.* at 397; *see Stanton*, 25 F.4th at 233 ("In questioning the split-second decisions of police officers, we must avoid hindsight bias and try to place ourselves in the heat of the moment."). Ultimately, "the question of whether the officer's actions were reasonable is a question of pure law." *Knibbs v. Momphard*, 30 F.4th 200, 214 (4th Cir. 2022); *see Scott v. Harris*, 550 U.S. 372, 381 n.8. (2007). The Court will analyze the conduct of the individual Defendants below.

**Anderson**

### *Use of the K-9*

The thrust of Plaintiff's excessive force arguments relates to the use of the K-9. It is undisputed that Anderson was the handler in command of the K-9. ECF No. 1-1 p. 10, ¶ 63; ECF No. 33-4. Therefore, the Court will first analyze the actions of Anderson under the *Graham* factors.

Neither Plaintiff nor Defendants provide significant analysis or argument regarding the first *Graham* factor, severity of the crime. Defendants assert that this case is factually similar to other cases in which this factor and the *Graham* test, as a whole, resulted in a finding that the use of force was objectively reasonable. Plaintiff does not directly address or separately argue how the *Graham* factors apply in this case, but in a section of the Response regarding negligence and the alleged violation of Sheriff's policy, Plaintiff asserts that, at the time force was used, the crimes being investigated were resisting arrest, driving under suspension, possession of drug paraphernalia, as well as the unknown cause of the drug dog to alert on Plaintiff's vehicle. ECF No. 36 at 10. The Court takes Plaintiff's assertion as an effort to suggest that the known crimes were not serious.

Construing the facts in the light most favorable to Plaintiff, at first blush this factor seems to favor Plaintiff. However, the analysis must focus "on the circumstances as they existed at the moment the force was used." *Knibbs*, 30 F.4th at 215. Just before the use of force, Plaintiff had become angry and begun cussing. Grice BWC 11:30 - 12:11; Anderson BWC 3:10 - 3:54. Plaintiff refused to calm down. Grice BWC at 12:12. These actions make the likelihood that the crime involved was more serious than that recounted by Plaintiff. On balance, the first factor does not weigh significantly in favor of Plaintiff or Anderson and is therefore "not particularly germane" to the analysis. *Knibbs*, 30 F.4th at 215.

The second and third *Graham* factors consider whether the suspect poses an immediate threat to the safety of the officers or others and whether he is actively resisting arrest or attempting to evade arrest by flight. In this case, these two factors are intertwined.

Plaintiff initially took the position that he was not resisting arrest. See ECF No. 1-1 at 5, ¶ 4 ("Plaintiff was not resisting arrest, nor trying to escape.") Plaintiff, nevertheless, under oath while pleading guilty to a resisting arrest charge, acknowledged it was true that he resisted by pulling away and a K-9 had to be used to detain him. ECF No. 33-10 at 20. Moreover, in his Response, Plaintiff now "concedes that he resisted arrest . . . ." ECF No. 36 at 8.[7] Additionally, the video evidence from the body worn cameras clearly show that Plaintiff was resisting arrest.[8]

---

[7] Even if Plaintiff had not conceded that he was resisting arrest, his own conflicting testimony would not preclude summary judgment. *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 198 (4th Cir. 1997) (A "genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct.") (quoting *Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984)).

[8] "In cases involving inconsistent witness testimony, unchallenged video evidence allows a court to accept the facts portrayed in the video for purposes of ruling on a motion for summary judgment." *Thrower v. Kinnee*, C/A No. 0:14-2791-JMC-PJG, 2015 WL 2338072, at *4 (D.S.C. Apr. 13, 2015); s*ee also Witt v. W. Va. State Police, Troop 2*, 633 F.3d 272, 276 (4th Cir. 2011) (stating that when a video "quite clearly contradicts" a version of the story so that "no

Anderson BWC 4:05 – 5:09; Downey BWC 12:08 – 12:53; Fletcher BWC2 10:40 – 11:45; Grice BWC 12:12 – 13:05.

Plaintiff, although conceding that he was resisting arrest, contends that "there was no cause for [the deputies] to believe anyone's safety was at risk." ECF No. 36 at 8. However, Plaintiff presents no facts or evidence to address or rebut the documentary evidence presented by Defendants that continued resisting and the inability to secure his wrists in cuffs was a danger. If Plaintiff had broken his arms free, he could have been a greater danger to the officers, as well as other customers at the gas station. As such, the second and third *Graham* factors favor Anderson.

Additionally, although not specified in *Graham*, courts have found that "the extent of the plaintiff's injuries is also a relevant consideration." *Jones v. Buchanan*, 325 F.3d 520, 527-8 (4th Cir. 2003); *see also Rowland v. Perry*, 41 F.3d 167, 174 (4th Cir. 1994); *Pressley v. Gregory*, 831 F.2d 514, 517 (4th Cir. 1987); *Lewallen*, 2022 WL 3161855, at *7. Although Plaintiff can be heard on the BWC videos complaining that the bite burned, the record before the Court does not indicate that the injuries were significant. Plaintiff had the wound cleaned and then was transported to the detention center. ECF No. 33-4 at 9. There is no medical evidence before the Court regarding a severe or debilitating wound, the need for surgery, any long-term or lasting injury, or any treatment after the night of the incident. *See Lewallen*, 2022 WL 3161855, at *6-8 (noting limited injury as a consideration in a dog bite case); *Lassiter v. Reece*, C/A No. 3:07-cv-885-HFF-JRM, 2008 WL 2852164, at *5 (D.S.C. July 22, 2008) (characterizing a plaintiff's injury as de minimis where his

---

reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment") (citing *Scott v. Harris*, 550 U.S. 372, 378, 380 (2007)); *Iko v. Shreve*, 535 U.S. 225, 230 (4th Cir. 2008) ("[W]here, as here, the record contains an unchallenged videotape capturing the events in question, we must only credit the plaintiff's version of the facts to the extent it is not contradicted by the videotape."). In this case, the video "clearly contradicts" any assertion that Plaintiff was not disobeying commands or was not resisting arrest by struggling against efforts to place him in handcuffs.

dog bite wounds were cleaned, treated with antibiotic ointment and bandaged, and the plaintiff
was provided with a tetanus shot and antibiotics) (citing *Foster v. Metropolitan Airports Comm'r*,
914 F.2d 1076, 1082 (8th Cir. 1990) (claims of nerve damage and pain, without medical records
establishing long-term injury, insufficient to demonstrate excessive use of force)); *Cooper v. City
of Virginia Beach*, 817 F. Supp. 1310, 1319 (E.D. Va. 1993) ("[L]asting or serious injury" must
be proven to escape summary judgment in excessive force case), *aff'd*, 21 F.3d 421 (4th Cir. 1994)
(Table).

### Length of Time K-9 was Engaged

Plaintiff also argues that the bite lasting almost 40 seconds constitutes excessive force.
ECF No. 36 at 9.  Plaintiff cites no authority in support of the assertion regarding the duration of
the dog bite.  Plaintiff also make no presentation or analysis of evidence to suggest that the duration
was improperly extended or done with an intent to harm Plaintiff.  The BWC video evidence
contradicts any such suggestion.  During the first 16 seconds of the bite duration, Plaintiff is
continuing to struggle and the officers had not yet secured the handcuff on his left wrist.  Downey
BWC 12:37 – 12:53.  Within 5 or 6 seconds of the handcuffs being secured, Anderson appears to
be making efforts to extract the K-9 and can be heard saying that he cannot do so because Plaintiff
was "pinching the dog" so that he could not get him off.  Downey BWC 12:57; Anderson BWC
4:50.

Further, in this District, dog bites involving time of engagement similar to this case have
been found reasonable and insufficient for a claim for excessive force.  *Lewallen*, 2022 WL
3161855, *2 (D.S.C. July 7, 2022) (finding bite by police dog objectively reasonable which lasted
under a minute); *Bullock v. Sinceno*, C/A No. 3:23-cv-5374-MGL-SVH, 2025 WL 2918014, *8-
10 (D.S.C. March 7, 2025) (dog bite prolonged for roughly 30 seconds after handcuffs were

secured did not violate a clearly established constitutional right). The record before the Court "supports the finding that the force used by the officers was that force which was necessary to affect the arrest of an aggressive individual in a rapidly changing environment." *Wilson v. Flynn*, 429 F.3d 465, 469 (4th Cir. 2005).

Under the totality of circumstances here, including Plaintiff's repeated disregard for orders to cease resisting arrest, multiple warnings to Plaintiff prior to use of the K-9, and Plaintiff's minor injuries, Anderson's use of force in taking Plaintiff into custody was objectively reasonable. *Graham*, 490 U.S. at 396-97 (noting the "calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a given situation."); *Mickle v. Ahmed*, 444 F. Supp. 2d 601, 611 (D.S.C. 2006) ("Because [the plaintiff] was forcibly resisting arrest, it was objectively reasonable for [the officer] to allow the K-9 to hold [the plaintiff] until he was securely handcuffed."). Accordingly, Anderson is entitled to summary judgment on Plaintiff's claim under § 1983 for excessive use of force.

**Fletcher, Downey, and Grice**

*Dog Bite Liability*

Plaintiff attempts to impose liability on all Defendants collectively for the dog bite. However, Plaintiff does not allege or present evidence that Fletcher, Downey, and Grice had control over the K-9. In fact the allegations are simply that Fletcher, Downey, and Grice restrained Plaintiff when Anderson approached Plaintiff with the K-9. ECF No. 1-1 p. 10, ¶ 61 and 64. Plaintiff's allegations are not sufficient to support liability against Fletcher, Downey, and Grice for excessive force based upon the dog bite. *See Hinds v. Mohr*, 56 F. App'x 591, 593 (4th Cir. 2003) (granting summary judgment to remaining police officers where a police canine was under

16

the control of its handler given the plaintiff did "not contend that [they] possessed by virtue of their positions or their training any ability to restrain the dog while it was under [the handler's] command"); *McDaniel v. Jackson*, C/A No. 2:18-cv-1939-RMG, 2019 WL 6463788, at *3 (D.S.C. Dec. 2, 2019) (finding no basis to support excessive force claim for dog bite against defendant who was not the K-9 handler); *Lewallen*, 2022 WL 3161855, *9 (finding officer who did not give the command to the dog and was not the dog handler was not responsible for dog bite); *Edwards v. High Point Police Dept.*, 559 F. Supp. 2d 653, 661 (M.D.N.C. 2008) (noting non-canine handler officer was entitled to summary judgment since he had no means to control the dog because he "was not a canine handler"); *Watterson v. Fowler*, C/A No. 9:06-cv-1064-PMD, 2006 WL 1663801, at *4 (D.S.C. June 8, 2006) (dismissing excessive force claim for dog bite as to South Carolina officers because they did not control the dog or order the dog to attack).

### *Bystander Liability*

Plaintiff also attempts to impose bystander liability as to Fletcher, Downey, and Grice. Plaintiff argues, again without citation of authority, that Defendants "breached their duty to intervene and stop the illegal use of force by choosing to allow the canine to be deployed, and by further allowing the canine to continue attacking the Plaintiff for 40 seconds." ECF No. 36 at 9.

"To succeed on a theory of bystander liability, a plaintiff must demonstrate that a law-enforcement officer '(1) knew that a fellow officer was violating an individual's constitutional rights; (2) had a reasonable opportunity to prevent the harm; and (3) chose not to act.'" *Stevenson v. City of Seat Pleasant, Md.*, 743 F.3d 411, 417 (4th Cir. 2014) (quoting *Randall v. Prince George's Cty., Md.*, 302 F.3d 188, 204 (4th Cir. 2002)); *see also Thomas v. Holly*, 533 F. App'x 208, 221 (4th Cir. 2013).

The first requirement for bystander liability requires a violation of Plaintiff's constitutional rights. As discussed above, because Anderson's actions in deploying the K-9 were objectively reasonable, this first requirement has not been met. *Sigman v. Town of Chapel Hill,* 161 F.3d 782, 788 (4th Cir. 1998) ("In the absence of an underlying use of excessive force, liability cannot be placed on other defendants.") (citing *Hinkle v. City of Clarksburg,* 81 F.2d 1380, 1390 (4th Cir. 1987)).

The second and third requirement for bystander liability involves the opportunity of Fletcher, Downey, and Grice to prevent harm and an affirmative choice not to intervene. In this matter, there is no evidence that Fletcher, Downey, or Grice had the ability to control the K-9. There is also no evidence that they knew of a clearly established constitutional violation and chose not to act. Additionally, at the time the K-9 was deployed, Fletcher, Downey, and Grice were actively involved in a struggle to control Plaintiff and get him secured in handcuffs. Even if a constitutional violation occurred, Fletcher, Downey, and Grice did not have a reasonable opportunity to stop the dog bite at issue.

Based upon the foregoing, Fletcher, Downey, and Grice are entitled to summary judgment on Plaintiff's claim under § 1983 for excessive use of force. [9]

---

[9] Defendants also argue that Plaintiff's excessive force claim is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), because Plaintiff's claim "would necessarily imply that the plaintiff's earlier conviction for resisting arrest was invalid." ECF No. 33-1 at 15 (citing *Mayes v. Swift*, C/A No. 6:10-cv-2991-TMC-KFM, 2011 WL 7281938, at *3 (D.S.C. Dec. 12, 2011). Defendants contend a guilty plea to resisting arrest forecloses an excessive force claim under § 1983 where the deputies "used force to gain control of the plaintiff during the arrest." ECF No. 33-1 at 15 (quoting *Mayes*, 2011 WL 7281938, at *3). Plaintiff argues, without citation to any federal authority or record evidence, that *Heck* does not apply because he "was not practicably able to apply for habeas since he was sentenced to time served." ECF No. 36 at 7. There is an exception to the *Heck* bar when a litigant could not, as a practical matter, have sought habeas relief while in custody. *Wilson v. Johnson*, 535 F.3d 262, 268 (4th Cir. 2008). The exact scope of the *Wilson* exception is not clear, particularly when there is no evidence of an effort to exhaust state remedies which would be a

**State Law Claims**

If the district court adopts the undersigned's recommendation to grant Defendants' Motion for Summary Judgment as to Plaintiff's § 1983 claim, all remaining claims are state law claims under the SCTCA and South Carolina dog bite statute. *See* ECF No. 1-1. The Court's jurisdiction over Plaintiff's state law claims is premised on supplemental jurisdiction. *See* 28 U.S.C. § 1367(a). A district court may decline to exercise supplemental jurisdiction if it "has dismissed all claims over which it has original jurisdiction." *Id.* § 1367(c)(3). "[T]rial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished," *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995), and the Fourth Circuit has identified several factors for a court to consider when making this determination: (1) "convenience and fairness to the parties," (2) "the existence of any underlying issues of federal policy," (3) "comity," and (4) "considerations of judicial economy." *Id.* The Fourth Circuit "evince[s] a strong preference that state law issues be left to state courts ...," *Arrington v. City of Raleigh*, 369 F. App'x 420, 423 (4th Cir. 2010), and South Carolina has a strong interest in deciding state law issues, *see Niemitalo, Inc. v. Greenville Cnty.*, C/A No. 6:20-cv-1432-HMH, 2020 WL 2745696, at *2 (D.S.C. May 27, 2020).

The balance of the applicable factors supports declining to exercise supplemental jurisdiction. Plaintiff's state law claims significantly implicate state and local policies. Moreover, a decision on these claims would involve an analysis of these policies, state tort law, and the South Carolina Tort Claims Act. *See* ECF No. 78 at 10-17. Courts in this District frequently decline to exercise supplemental jurisdiction over claims implicating state and local concerns. *See Mathis v.*

---

prerequisite to federal habeas relief. However, considering the other recommendations in this Report, the Court does not need to address this issue.

*Anderson Cnty.*, C/A No. 8:22-234-DCC-KFM, 2024 WL 4486601, at \*22 (D.S.C. May 29, 2024) (recommending that the district court decline to exercise supplemental jurisdiction over a plaintiff's state law negligence/gross negligence claim when the state law claim implicated local policies and "a decision on this claim would involve an analysis of the creation, interpretation, and enforcement of these local policies, state tort law, and the South Carolina Tort Claims Act."), *R&R adopted by* 2024 WL 4024019 (D.S.C. Sept. 3, 2024); *Mazyck v. City of North Charleston*, C/A No. 2:23-cv-02602-DCN, 2023 WL 6795418, at \*8 (D.S.C. Oct. 13, 2023) ("Rather, this dispute presents a local matter, which the principle of comity obligates be resolved in state court. … Hence, that is where this case will go."); *Holmes v. Town of Clover*, C/A No. 0:17-cv-03194-JMC, 2019 WL 4267515, at \*10 (D.S.C. Sept. 10, 2019) ("'It is a common practice of the judges in this district to decline to exercise supplemental jurisdiction over local matters if the federal claims over which the court has original jurisdiction are dismissed.'") (quoting *Miller v. D.C. Water & Sewer Auth.*, C/A No. 17-cv-0840 (KBJ), 2018 WL 4762261, at \*15 (D.D.C. Oct. 2, 2018)).  The Supreme Court of the United States has cautioned that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.  Certainly, if the federal claims are dismissed before trial ... the state law claims should be dismissed as well."  *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).  Accordingly, comity principles and an absence of federal issues in this matter weigh in favor of declining to exercise supplemental jurisdiction.

Regarding judicial economy, although discovery is complete and the Motion for Summary Judgment briefing addresses the state law claims, no court has assessed the merits of Plaintiff's state law claims, so that there is no loss of judicial economy if a state court were to rule on the arguments for Summary Judgment on the state law claims.  As recently stated by the United States

Court of Appeals for the Fourth Circuit, "[g]enerally, when a district court dismisses all federal claims in the early stages of litigation—e.g., at the summary-judgment stage—it should decline to exercise jurisdiction over any remaining pendent state law claims by dismissing those claims without prejudice." *Henderson v. Harmon*, 102 F.4th 242, 251 (4th Cir. 2024) (citations omitted). Moreover, courts in this District routinely decline to exercise supplemental jurisdiction over a plaintiff's state law claims after dismissing federal claims at the summary judgment stage. *See, e.g., Mathis v. Anderson Cnty.*, C/A No. 8:22-cv-00234-DCC, 2024 WL 4024019, at *2-8 (D.S.C. Sept. 3, 2024) (granting in part the defendants' motion for summary judgment and declining to exercise supplemental jurisdiction over the plaintiff's remaining state law claims); *Wilder v. Fairfield Cnty. Sch. Dist.*, C/A No. 0:08-2419-CMC, 2009 WL 10677373, at *4-5 (D.S.C. Oct. 5, 2009) (granting in part defendants' motions for summary judgment and declining to exercise supplemental jurisdiction over the remaining state law claims); *see also Culbertson v. Lott*, C/A No. 3:19-cv-26-MGL-PJG, 2021 WL 805538 (D.S.C. Mar. 3, 2021) (dismissing federal law claims and declining to exercise supplemental jurisdiction over state law claims in a case that had been pending for over two years); *Frazier v. South Carolina Dep't of Corr.*, C/A No. 4:19-cv-1272-MGL-TER, 2021 WL 809426 (D.S.C. Mar. 3, 2021) (dismissing federal law claims and declining to exercise supplemental jurisdiction over state law claims in a case that had been pending for nearly two years); *Boyd*, 2023 WL 155549, at *3 (declining to exercise supplemental jurisdiction in a case that had been pending for over a year-and-a-half). Additionally, "[o]nly minor changes to the parties' summary judgment submissions … will be required before filing them in state court." *Boyd v. Nephron Pharm. Corp.*, C/A No. 3:20-4385-MGL, 2023 WL 155549, at *3 (D.S.C. Jan. 11, 2023). Therefore, principles of judicial economy do not weigh in favor of an exercise of supplemental jurisdiction.

Convenience and fairness interests also favor declining to exercise supplemental jurisdiction due to the parties' ties to Greenville, South Carolina. As previously noted, Plaintiff elected to file suit initially in Greenville County and the underlying conduct occurred in Greenville between parties living in Greenville County. The Greenville County Court of Common Pleas is both a convenient and fair forum for the state law claims. Further, should this claim proceed to trial, the undersigned finds that it would be more appropriate for a trial involving claims under the SCTCA to occur in a state court. *See Scannell v. S.C. Dep't of Social Servs.*, C/A No. 2:20-cv-4288-BHH-MGB, 2024 WL 911490, at *4 (D.S.C. Mar. 4, 2024).

In sum, after carefully balancing the applicable factors, the undersigned finds that Plaintiff's claims present quintessential state law questions best reserved for a state court to decide. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered ... will point toward declining to exercise jurisdiction over the remaining state-law claims."). Therefore, the undersigned recommends that the district court decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims and remand the state law claims to the Greenville County Court of Common Pleas.

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, the undersigned **RECOMMENDS** the following: (1) Defendant's Motion for Summary Judgment (ECF No. 33) should be **GRANTED in part** as to all Defendants on the § 1983 claim asserted in the sixth caused of action, (2) the district court should decline to exercise supplemental jurisdiction over the remaining claims, and (3) the district court should remand the remaining state law claims to the Greenville County Court of Common Pleas.

**IT IS SO RECOMMENDED.**

s/William S. Brown
United States Magistrate Judge

January 9, 2026
Greenville, South Carolina

*The attention of the parties is directed to the important notice on the following page*

### Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
250 East North Street, Suite 2300
Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).